# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JESSIE MULLINS,                                 Case No. 1:12-cv-255
      Petitioner,

                                      Dlott, J.
      vs.                                       Bowman, M.J.

WARDEN, LEBANON                           **REPORT AND**
CORRECTIONAL INSTITUTION,                 **RECOMMENDATION**
      Respondent.


Petitioner, an inmate in state custody at the Lebanon Correctional Institution in Lebanon, Ohio, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.   This matter is before the Court on the petition, respondent's return of writ, and petitioner's reply.   (Docs. 1, 12, 14).

## I.      PROCEDURAL HISTORY

### State Trial Proceedings

On June 18, 2009, the Hamilton County, Ohio, grand jury returned a nine-count indictment charging petitioner with two counts of aggravated murder, three counts of murder, one count of rape, two counts of aggravated robbery, and one count of tampering with evidence.   (Doc. 12, Ex. 1).   After initially entering a not-guilty plea, petitioner withdrew his plea and pled guilty to one count each of voluntary manslaughter, aggravated robbery, and tampering with evidence.   (Doc. 12, Ex. 2, 3).   The trial court accepted petitioner's pleas on January 5, 2010, and petitioner was sentenced to a total aggregate sentence of twenty-three years of imprisonment.   (Doc. 12, Ex. 6).

### Delayed Direct Appeal

Petitioner did not file a timely direct appeal of his conviction and sentence.   On March 2, 2010, petitioner, through new counsel, filed a notice of appeal and a motion for leave to file a

delayed appeal in the Ohio Court of Appeals. (Doc. 12, Ex. 7). In his appellate brief petitioner presented the following three assignments of error:

1. The trial court erred by imposing a sentence that is not supported by the findings in the record.

2. The trial court erred in accepting a guilty plea which was not made knowingly, intelligently, and voluntarily.

3. Defendant was deprived of his constitutional right to effective assistance of counsel when defense counsel failed to properly inform him of the consequences of his plea, and when defense counsel failed to move the court to withdraw his plea of guilty.

(Doc. 12, Ex. 8). On December 3, 2010, the Ohio Court of Appeals issued a judgment entry affirming the judgment of the trial court and overruling each of petitioner's assignments of error. (Doc. 12, Ex. 10).

## Ohio Supreme Court

On January 18, 2011, petitioner filed a pro se notice of appeal to the Ohio Supreme Court. (Doc. 12, Ex. 11). In his memorandum in support of jurisdiction petitioner raised the following three propositions of law:

1. When the trial court errs by imposing a sentence that is not supported by findings in the record, the Appellant is denied the due process of law and his constitutional right to a fair trial thus violating his constitutional rights guaranteed to him by the 5th and 14th Amendments of the U.S. Constitution and the equivalent Ohio constitutional articles.

2. When the trial court errs in accepting a guilty plea which is not made knowingly, intelligently and voluntarily complying with Crim. R. 11, the Appellant's constitutional rights to due process of law are violated under the 5th and 14th Amendments of the U.S. Constitution and equivalent Ohio articles.

3. When a criminal defendant's counsel's performance falls below the standard of reasonableness and his errors deprive the Appellant of his right to a fair trial by failing to properly inform him of the consequences of his plea and fails to move

2

the court to withdraw the Defendant's plea after the court misleads his client, the Appellant's constitutional rights under the 5th, 6th, and 14th Amendments to the U.S. Constitution are violated.

(Doc. 12, Ex. 12).   On March 16, 2011, the Ohio Supreme Court denied leave to appeal and dismissed the appeal "as not involving any substantial constitutional question."   (Doc. 12, Ex. 14).

## Federal Habeas Corpus

Petitioner filed the instant federal habeas petition on March 29, 2012.   (Doc. 1).

Petitioner raises the following three grounds for relief in the petition:

**GROUND ONE:**   Trial court erred in imposing a sentence that is not supported by the record violating the 5th and 14th Amendments.

Supporting facts:   When the trial court fails to consider the existence of substantial grounds to mitigate the offender's conduct, pursuant to O.R.C. 2929.14(C)(4), the court is unable to adequately address the overriding purpose of sentencing, punishment of offenders, and protection of the public from future crime which violates the Petitioner's right to a fair trial and the due process of law.

**GROUND TWO:**   The trial court erred in accepting a guilty plea which was not made knowingly, intelligently, and voluntarily in violation of the 5th and 14th [Amendments].

Supporting Facts:   The trial court violated the Petitioner's right to due process when it accepted a guilty plea without complying with Crim. R. 11 as the record clearly shows the Petitioner was expecting a substantially less severe sentence in exchange for plea which was not honored by the court but clear from the record in violation of the 5th and 14th Amendments.

**GROUND THREE:**   Ineffective assistance of trial counsel in violation of the 5th, 6th and 14th Amendments

Supporting Facts:   Counsel did not properly explain the possibility the court may not adhere to the specific sentence ag[]reed to and when promise was not kept counsel failed to move to withdraw plea for that reason he renders ineffective assistance of counsel in violation of the 5th, 6th and 14th Amendments.

3

(Doc. 1).

Respondent has filed a return of writ arguing that the petition should be denied.   (Doc. 12).

Respondent contends that petitioner's grounds for relief are without merit.

## II.    THE PETITION SHOULD BE DENIED.

In this federal habeas case, the applicable standard of review governing the adjudication of

the constitutional claims that were raised to and decided by the Ohio courts is set forth in 28 U.S.C.

§ 2254(d).   Under that provision, a writ of habeas corpus may not issue with respect to any claim

adjudicated on the merits by the state courts unless the adjudication either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a

conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state

court decides a case differently than [the Supreme] Court has on a set of materially

indistinguishable facts.'"   *Otte v. Houk,* 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v.*

*Taylor,* 529 U.S. 362, 412-13 (2000)), *cert. denied*, 132 S.Ct. 1743 (2012).   "A state court's

adjudication only results in an 'unreasonable application' of clearly established federal law when

'the state court identifies the correct governing legal principle from [the Supreme] Court's

decisions but unreasonably applies that principle to the facts of the prisoner's case.'"   *Id.* at

599-600 (quoting *Williams,* 529 U.S. at 413).

The statutory standard, established when the Antiterrorism and Effective Death Penalty

4

Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet.  *Id.* at 600.

As the Sixth Circuit explained in *Otte*:

> Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's standards.  *See, e.g., Cullen v. Pinholster,* ___ U.S. ___, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (holding that AEDPA limits a federal habeas court to the record before the state court where a claim has been adjudicated on the merits by the state court).  It is not enough for us to determine that the state court's determination is *incorrect*; to grant the writ under this clause, we must hold that the state court's determination is *unreasonable*. . . .  This is a "substantially higher threshold.". . .  To warrant AEDPA deference, a state court's "decision on the merits" does not have to give any explanation for its results, *Harrington v. Richter,* U.S. ___, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011), nor does it need to cite the relevant Supreme Court cases, as long as "neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

*Id.* (emphasis in original).  The Supreme Court recently extended its ruling in *Harrington* to hold that when a state court rules against a defendant in an opinion that "addresses some issues but does not expressly address the federal claim in question," the federal habeas court must presume, subject to rebuttal, that the federal claim was "adjudicated on the merits" and thus subject to the "restrictive standard of review" set out in § 2254(d).  *See Johnson v. Williams*, ___ U.S. ___, 133 S.Ct. 1088, 1092 (2013).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents."  *Harrington*, 131 S.Ct. at 786.  In other words, to obtain federal habeas relief under that provision, the state prisoner must show that the state court ruling on the claim presented "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for

fairminded disagreement." *Id.* at 786-87.

The Supreme Court has made it clear that in assessing the merits of a constitutional claim under § 2254(d), the federal habeas court must apply the Supreme Court precedents that controlled at the time of the last state-court adjudication on the merits, as opposed to when the conviction became "final." *Greene v. Fisher*, ___ U.S. ___, 132 S.Ct. 38, 44-45 (2011); *cf. Otte*, 654 F.3d at 600 (citing *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003)) (in evaluating the merits of a claim addressed by the state courts, the federal habeas court must "look to Supreme Court cases already decided at the time the state court made its decision"). In *Greene*, 132 U.S. at 44, the Court explained:

> [W]e held last term in *Cullen v. Pinholster*, 563 U.S. ___, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the prisoner's claim on the merits. We said that the provision's "backward-looking language requires an examination of the state-court decision at the time it was made." *Id.*, at ___, 131 S.Ct. at 1398. The reasoning of *Cullen* determines the result here. As we explained, § 2254(d)(1) requires federal courts to "focu[s] on what a state court knew and did," and to measure state-court decisions *as of 'the time the state court renders its decision.'"* *Id.*, at ___, 131 S.Ct. at 1399 (quoting *Lockyer v. Andrade*, 538 U.S. [at] 71-72 . . .; emphasis added).

Decisions by lower courts are relevant "to the extent [they] already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court." *Otte*, 654 F.3d at 600 (quoting *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010), *cert. denied*, 132 S.Ct. 127 (2011)). The writ may issue only if the application of clearly-established federal law is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee v. Yukins*, 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams*, 529 U.S. at 412).

**A.  Ground One is not cognizable and without merit.**

In Ground One of the petition, petitioner contends that his due process rights were violated when the trial court sentenced him without considering mitigating factors.  (Doc. 1).  Petitioner further contends that the record did not support his conviction for aggravated robbery, as he claims that the essential elements of the offense were not proven.  (Doc. 14, p. 3).

Petitioner's allegations fail to give rise to a claim cognizable in federal habeas corpus to the extent that his claims are based on alleged violations of state law.  A federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States, and not "on the basis of a perceived error of state law."  28 U.S.C. § 2254(a); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  *See also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions").

In this case, petitioner claims that without considering mitigating factors[1] at his sentencing hearing, the trial court was unable to "adequately address the overriding purpose of sentencing, punishment of offenders, and protection of the public from future crime," as petitioner claims was required under Ohio Rev. Code § 2929.14(C)(4).  (Doc. 1).  To the extent petitioner contends he is entitled to relief because the trial court committed error or otherwise abused its discretion under state law, he raises issues of state law only that are not cognizable in this federal habeas corpus proceeding.  *See Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) (finding a challenge to state court's interpretation and application of its sentencing laws and guidelines to be a matter of state

---

[1] Petitioner notes that "[t]he victim was a homosexual pedophile who had made inappropriate sexual advances to this Petitioner, and a serious sexual offer of improper group sex.  The Court did not take this into account, thus sentencing him improperly, in violation of Due Process, since the Law required such consideration in sentencing."  (Doc. 14, p. 3).

law not cognizable in a federal habeas corpus proceeding).

To the extent that petitioner alleges a due process violation in connection with his sentencing, the undersigned finds his claim without merit.   As noted by the Ohio Court of Appeals, petitioner was sentenced to precisely the same sentence he bargained for in the plea agreement.   (*See* Doc. 12, Ex. 10, p. 2, Ex. 3, Ex. 6).   Although at sentencing petitioner requested the Court to impose a sentence lower than the sentence agreed to in the plea agreement based on mitigating factors, the trial court's failure to do so did not result in a violation of petitioner's due process rights.

Petitioner's argument that he is entitled to habeas relief based on the fact that the trial court did not prove the essential elements of aggravated robbery is also without merit.   Petitioner contends that the record in his case demonstrates that he did not commit an aggravated robbery because the victim had no money, no weapon was involved, and that petitioner did not commit the act for financial gain.   (Doc. 14, p. 3).   In ruling on this portion of his argument on direct appeal, the Ohio Court of Appeals ruled as follows:

> Mullins also notes that he claimed, during the sentencing hearing, that he was not guilty of aggravated robbery.   This is not entirely true.   When trial counsel began to argue that Mullins had not stolen from the victim, the trial court specifically asked if he was claiming that Mullins was not guilty of aggravated robbery.   Trial counsel denied that this was the case, stating "they did take the wallet, credit cards, and the like.   It was not for financial gain, per se.   There wasn't a financial motive within that."   Claiming that the theft lacked a "financial motive" was not the same as claiming that Mullins did not commit aggravated robbery, as seeking financial gain was not an element of that offense.

(Doc. 12, Ex. 10, pp. 2-3).   As noted by the state appellate court, financial motive is not an element of Ohio's aggravated robbery statute.[2]   In any event, upon entering his guilty plea,

---

2 Ohio Rev. Code § 2911.01(A)(1), Ohio's aggravated robbery statute, states that "No person, in attempting or committing a theft offense as defined in section 2919.01 of the Revised code, or in fleeing immediately after the

petitioner waived his right to have the State prove each element of his offenses.   *United States v. Broce*, 488 U.S. 563, 569 (1989) ("A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence."); *State v. Porterfield*, 829 N.E.2d 690, 695 (Ohio 2005) ("Once a defendant stipulates that a particular sentence is justified, the sentencing judge no longer needs to independently justify the sentence.").   Prior to accepting petitioner's plea, the trial court ensured petitioner acknowledged that he waived his right to have the State prove his guilt beyond a reasonable doubt and that "a plea of guilty is a complete admission of your guilt, an admission of the fact the prosecutor is going to read and an admission of those facts constitutes a violation of the law." (Doc. 12, Plea Transcript pp. 4, 8).[3]   Contrary to petitioner's claim, the facts recited by the prosecution and admitted to by petitioner by virtue of his plea were sufficient to support petitioner's aggravated robbery conviction.

Accordingly, petitioner is not entitled to relief based on Ground One of the petition because the claims raised are either not cognizable or without merit.

**B.  Ground Two is without merit.**

In Ground Two, petitioner claims that his plea was involuntary.   Petitioner bases his claim on the fact that the trial court informed plaintiff that it was not bound by any particular sentence in prior to accepting his guilty plea.   According to petitioner, the trial court later indicated that it was

---

attempt or offense shall. . . [h]have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possess it, or use it."

3 The prosecution included the following facts supporting petitioner's aggravated robbery conviction:   "[D]efendant purposefully commit[ed] or attempted to commit a theft offense as defined in Section 2913.01 of the Revised Code, to wit: knowingly obtained or attempted to obtain personal property or credit cards belonging to William Nauman or fleeing immediately thereafter, having a deadly weapon on or about his person or under his control, displayed, brandished, indicated possession or used the deadly weapon, to wit: a knife and/or a bludgeon."   (Doc. 12, Plea Transcript p. 11).

bound by the sentencing agreement.

Petitioner raised this claim in the Ohio Court of Appeals.   In overruling the assignment of error, the Ohio appellate court found that petitioner failed to demonstrate that his plea was unknowing, involuntary, or unintelligent:

> In his second assignment of error, Mullins claims that his plea was not knowing, voluntary, and intelligent.   He notes that the trial court indicated, when accepting the plea, that it was not bound by the sentencing agreement, but that it gave indications that it was bound by the agreement at the sentencing hearing. Notwithstanding this, Mullins received exactly what he had bargained for in the plea agreement with the state.   The fact that the trial court noted, correctly, that it was not bound to impose the agreed sentence but later did so does not demonstrate that the plea, which was made with the expectation of the agreed sentence, was unknowing, involuntary, or unintelligent.

(Doc. 12, Ex. 10, p. 2).

The Fourteenth Amendment's Due Process Clause guarantees that a guilty plea must be made voluntarily and intelligently with sufficient awareness of the relevant circumstances and likely consequences.   *Boykin v. Alabama,* 395 U.S. 238, 242 (1968); *see also Brady v. U.S.,* 397 U.S. 742, 748 (1970); *King v. Dutton,* 17 F.3d 151, 153 (6th Cir. 1994).   "[A] plea does not qualify as intelligent unless a criminal defendant first receives 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Bousley v. United States*, 523 U.S. 614, 618 (1998) (quoting *Smith v. O'Grady,* 312 U.S. 329, 334 (1941)).   In *Brady,* the Supreme Court adopted the following standard for determining the voluntariness of a guilty plea:

> [A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

*Brady,* 397 U.S. at 755 (quoting *Shelton v. United States,* 246 F.2d 571, 572 n.2 (5th Cir. 1957) (en

banc), *rev'd on other grounds,* 356 U.S. 26 (1958)).   The voluntariness of a guilty plea must be

assessed in light of all the relevant circumstances surrounding the plea.   *Brady,* 397 U.S. at 749;

*King,* 17 F.3d at 153 (and cases cited therein).

For a guilty plea to be deemed voluntarily entered with a "sufficient awareness of the

relevant circumstances and likely consequences," the defendant must be correctly informed of the

maximum sentence that could be imposed.   *King,* 17 F.3d at 154; *Hart v. Marion Corr. Instit.,* 927

F.2d 256, 259 (6th Cir. 1991).   Although the defendant must be apprised of such "direct

consequences" of the plea, the court is under no constitutional obligation to inform the defendant

of all the possible "collateral consequences" of the plea.   *King,* 17 F.3d at 153; *see also El-Nobani*

*v. United States,* 287 F.3d 417, 421 (6th Cir. 2002).   "When a defendant subsequently brings a

federal habeas petition challenging his plea, the state generally satisfies its burden by producing a

transcript of the state court proceeding."   *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993).

As the Supreme Court noted in *Blackledge v. Allison,* 431 U.S. 63 (1977):

> [T]he representations of the defendant, his lawyer, and the prosecutor at [the guilty
> plea hearing], as well as any findings made by the judge accepting the plea,
> constitute a formidable barrier in any subsequent collateral proceedings. Solemn
> declarations in open court carry a strong presumption of verity. The subsequent
> presentation of conclusory allegations unsupported by specifics is subject to
> summary dismissal, as are contentions that in the face of the record are wholly
> incredible.

*Id.* at 73-74 (internal citations omitted).

In this case, petitioner claims that his guilty plea was involuntary because he entered the

plea with the honest belief "that he had the opportunity to present all mitigating factors, and

present evidence that proves that no aggravated robbery occurred," before being sentenced.

11

(Doc. 14, p. 5).   Petitioner claims that the trial court gave no consideration to his mitigation argument, noting that the prosecution referred to the plea agreement as a contract and the judge ultimately sentenced him to the agreed-upon sentence.   According to petitioner, the trial court thus "tricked this Petitioner into pleading guilty."   *Id.*

After review of the record in this case the undersigned concludes that petitioner has failed to demonstrate the Ohio Court of Appeals' decision, finding that petitioner's guilty plea was entered knowingly, voluntarily and intelligently, was either contrary to or an unreasonable application of Supreme Court precedent.   As the Ohio Court of Appeals noted, trial courts are not bound by jointly recommended sentences.   *See State v. Underwood,* 922 N.E.2d 923, 929 (Ohio 2010).   In this case, the trial court informed petitioner that it was not bound to the sentence recommended in the plea agreement, advising petitioner that he could sentence him to anything from probation up to twenty five years imprisonment.   (Doc. 12, Plea Trans. pp. 6-7).   During petitioner's subsequent sentencing hearing, his attorney argued that there were mitigating factors that should be considered by the trial court, including the amount of alcohol consumed by petitioner, a lack of a financial motive for committing a robbery, and the unique relationship between the victim and petitioner.   (Doc. 12, Sentencing Trans. pp. 2-4).   Counsel for petitioner further indicated that based on those mitigating factors and petitioner's prior record, that petitioner would be amenable to rehabilitation.   *Id.* at 4.   The trial judge asked whether, in light of the request to depart from the agreed upon sentence, whether the state would desire to proceed with the plea and agreed sentence.   *Id.*   In response, the state indicated that they would ask for the agreed upon sentence, noting that "[w]e consider it a contract and we will stick to it."   *Id.* at 5.   Petitioner was then given an opportunity to address the court before the trial judge sentenced petitioner to the

12

agreed sentence.  *Id.* at 5-6.

Contrary to petitioner's position, the record indicates that petitioner was permitted to present mitigating factors to the sentencing judge.   Neither the fact that the state referred to the plea agreement as a contract nor the fact the sentencing judge ultimately imposed the agreed sentence demonstrates that the trial court was bound to the agreed sentence, did not consider the mitigating factors or that petitioner's guilty plea was involuntary.

As reasonably determined by the Ohio appellate court, the record in this case reflects that petitioner entered a valid plea.   In addition to informing petitioner that the trial court was not bound by any sentence agreed to in the plea agreement, the trial judge engaged in an extensive colloquy with petitioner to ensure that petitioner read and understood the plea agreement, went over it with his attorney, signed the plea entry form, was not under the influence of drugs or alcohol, understood the charges against him and the maximum sentences he could receive, that the guilty plea was a complete admission of guilt, and that he had not been promised anything or threatened in connection with entering his guilty plea.   *Id.* at 4-7.   Petitioner further affirmed that he understood that he waived his right to a trial, to confront witnesses against him, to subpoena witnesses to testify, and to have the state prove his guilt beyond a reasonable doubt.   *Id.* at 7-13.

Upon examination of the totality of circumstances surrounding petitioner's plea, the undersigned concludes that petitioner's plea represented a "voluntary and intelligent choice among the alternative courses of action open to the defendant."   *Sparks v. Sowders,* 852 F.2d 882, 885 (6th Cir. 1988) (quoting *North Carolina v. Alford,* 400 U.S. 25, 31 (1970)).   By voluntarily agreeing to the imposition of the agreed sentence in exchange for the dismissal of other charges carrying additional penalties, petitioner is unable to now complain that he should have received a

13

shorter sentence.   Accordingly, petitioner is not entitled to habeas relief based on Ground Two of the petition.

**C. Ground Three is without merit.**

In Ground Three, petitioner brings a claim of ineffective assistance of counsel.   He contends that counsel improperly advised him "that the Court would consider the imposition of a less severe sentence, despite the agreed sentence that he himself had negotiated." (Doc. 14, p. 5).  Petitioner argues that when the Court "misrepresented," that it was not bound by the sentence agreed to in the plea agreement, that counsel "should have interrupted, and [] had the Court explain correctly, something which he himself had not done."   *Id.* at 6.   He claims that counsel's ineffective assistance resulted in his plea being involuntary.

In dismissing petitioner's claim of ineffective assistance of counsel on direct appeal, the Ohio Court of Appeals ruled as follows:

> In his third assignment of error, Mullins claims that his trial attorney was ineffective for suggesting a specific sentence, and because he failed to ask the trial court to allow Mullins to withdraw his plea.  But counsel was not ineffective simply for entering into a plea agreement with an agreed sentence.   Several counts, including the most serious charges, were dismissed as a result of the plea agreement, and Mullins received less than the maximum penalty.   And, as we have already held, Mullins knowingly, voluntarily, and intelligently entered into the plea agreement.   His third assignment of error is overruled.

(Doc. 12, Ex. 10, p. 3).

The Supreme Court precedent setting forth the clearly-established federal legal principles applicable to petitioner's ineffective assistance of counsel claim is *Strickland v. Washington,* 466 U.S. 668 (1984).   In order to establish an ineffective assistance of counsel claim, petitioner must demonstrate that (1) his trial attorney made such serious errors that he was not functioning as the "counsel" guaranteed by the Sixth Amendment; and (2) counsel's deficient performance

14

prejudiced the defense.   *See id.* at 687.

Under the first prong of the *Strickland* test, petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case.   *Id.* at 688.   Judicial scrutiny of counsel's performance must be highly deferential, and a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight" and to evaluate the challenged conduct from counsel's perspective at the time of the conduct.   *Id.* at 689.   In determining whether or not counsel's performance was deficient, the Court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.   *Id.*

To satisfy the "prejudice" prong of the *Strickland* test, petitioner must show that a "reasonable probability" exists that, but for his counsel's errors, the result of the criminal proceedings would have been different.   *Id.* at 694.   A showing by petitioner that the alleged errors had "some conceivable" effect on the outcome of the proceeding is insufficient to meet this standard.   *Id.* at 693.   However, by the same token, petitioner need not demonstrate that his counsel's conduct "more likely than not" altered the outcome of the proceeding to establish prejudice.   *See id.*   Petitioner has met his burden if he shows that the decision reached would "reasonably likely have been different absent the errors."   *Id.* at 695; *see also Willis v. Smith,* 351 F.3d 741, 745 (6th Cir.2003); *McMeans v. Brigano,* 228 F.3d 674, 682 (6th Cir.2000).

After review of the record in this case, the undersigned concludes that petitioner has failed to demonstrate that the Ohio Court of Appeals' decision was contrary to or an unreasonable application of the *Strickland* standard.[4]   Like petitioner's prior grounds for relief, his ineffective

---

4 Petitioner contends that the Ohio appellate court's decision is not entitled to deference.   He contends that his claim should be reviewed *de novo* because the decision does not mention *Strickland* or appear to engage in any analysis

assistance of counsel claim is premised on the notion that the trial court was in fact bound by the sentence agreed to in the plea bargain. However, as the Court has discussed above, the trial court was not bound by any agreed sentence and petitioner was specifically advised of the range of sentences that he faced as a consequence of entering his plea. Furthermore, the record indicates that petitioner was ultimately able to present mitigating factors in support of a lower sentence. Therefore, it does not appear that counsel provided petitioner with improper advice, that there was any "misrepresentation" for counsel to clear up prior to petitioner entering his guilty plea, or that his plea was somehow involuntary based on counsel's performance. The record supports the Ohio Court of Appeals' finding that counsel's performance was not deficient. As noted by the Ohio appellate court, the plea bargain resulted in the dismissal of several charges, including counts of rape, aggravated murder and murder. Petitioner has thus failed to demonstrate that the Ohio Court of Appeals' decision was contrary to or an unreasonable application of Supreme Court precedent and he is not entitled to relief based on Ground Three of the petition.

Accordingly, in sum, petitioner is not entitled to habeas corpus relief based on the grounds alleged in the petition. Having found that petitioner's grounds for relief are without merit, it is **RECOMMENDED** that petitioner's petition for a writ of habeas corpus (Doc. 1) be **DENIED** with prejudice.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the grounds for relief set

under that standard. (Doc. 14, p. 6). However, as noted above, a state court's decision on the merits does not need to cite to the relevant Supreme Court cases so long as "neither the reasoning nor the result of the state-court decision contradicts them." *Otte,* 654 F.3d at 600.

forth in the petition, which were addressed on the merits herein, because petitioner has not stated a "viable claim of the denial of a constitutional right" or that the issues presented are "adequate to deserve encouragement to proceed further."  *See Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (*citing Barefoot v. Estelle*, 463 U.S. 880, 893 & n. 4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R.App. P. 22(b).

3.   With respect to any application by petitioner to proceed on appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.   *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).


                                                                                *s/ Stephanie K. Bowman*
                                                                 Stephanie K. Bowman
                                                                 United States Magistrate Judge


17

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JESSIE MULLINS,                              Case No. 1:12-cv-255
      Petitioner,

                                          Dlott, J.
      vs.                             Bowman, M.J.

WARDEN, LEBANON
CORRECTIONAL INSTITUTION,
      Respondent.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.    This period may be extended further by the Court on timely motion for an extension.   Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.   If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.   A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.   Failure to make objections in accordance with this procedure may forfeit rights on appeal.   *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).